586 P.2d 1090

Harriet MARABLE, Plaintiff-Appellant,

v.

SINGER BUSINESS MACHINES, Employer and Liberty Mutual Insurance Company, Insurer, Defendants-Appellees.

No. 3544.

Court of Appeals of New Mexico.

Oct. 31, 1978.

Stephen L. ReVeal, Albuquerque, for plaintiff-appellant.

Peter G. Prina & Kenneth J. Ferguson, Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, for defendants-appellees.

OPINION

SUTIN, Judge.

Plaintiff sued defendants under the "New Mexico Occupational Disease Disablement Law." Sections 59–11–1, et seq., N.M.S.A. 1953 (2d Repl. Vol. 9, pt. 1). She alleged two separate "occupational diseases": (1) a "severe neurotic mental depression" allegedly developed by continued mental and physical harassment by male employees on the loading dock who objected

262

to a female dock employee; and (2) "curvature of her spine and arthritis from repeated lifting of heavy objects."

The amended complaint was dismissed with prejudice for failure to state a claim upon which relief can be granted. Plaintiff appeals. We affirm.

Plaintiff's brief is of no assistance. It does not discuss the definition of "occupational disease" nor its relationship to the allegations in plaintiff's complaint. It cites no authority on the subject matter and raises no questions that are real and substantial. The argument lacks substance. Plaintiff relies on workmen's compensation cases which are irrelevant to the issue in this appeal. Though plaintiff's brief states that the question involved is a matter of first impression, it postulates three pages of vacuous statements to reverse the trial court. Plaintiff's transfer of her burden to this Court does not earn our plaudit.

By the citation of workmen's compensation cases, plaintiff has established that traumatic and compensation neurosis can be an accidental injury compensable under the Workmen's Compensation Act. *Ross v. Sayers Well Servicing Company*, 76 N.M. 321, 414 P.2d 679 (1966); *Jensen v. United Perlite Corporation*, 76 N.M. 384, 415 P.2d 356 (1966). Yet, plaintiff did not plead in the alternative that her injury was compensable under the Workmen's Compensation Act. See *Underwood v. National Motor Castings Division*, 329 Mich. 273, 45 N.W.2d 286 (1951).

Plaintiff wants us to accept as true the facts alleged in the amended complaint and plaintiff seeks an opportunity to prove, at trial, that the "diseases" alleged were "occupational diseases." We accept the alleged facts as true. We shall determine as a matter of law whether the "diseases" alleged were "occupational diseases," permissible to be proven at trial.

Section 59–11–21 defines an "occupational disease":

. . . "occupational disease" *includes any disease peculiar to the occupation* in which the employee was engaged *and due to causes in excess of the ordinary hazards of employment as such* . . . . . [Emphasis added.]

" 'To come within the definition, an occupational disease must be a disease which is *a natural incident of a particular occupation*, and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of that attending employment in general.' " [Emphasis added.] *Herrera v. Fluor Utah, Inc.*, 89 N.M. 245, 247, 550 P.2d 144, 146 (Ct.App.1976).

"Thus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, *but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation*, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general." [Emphasis added.] *Goldberg v. 954 Marcy Corporation*, 276 N.Y. 313, 12 N.E.2d 311, 313 (1938). "It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort." *Harman v. Republic Aviation Corporation*, 298 N.Y. 285, 82 N.E.2d 785, 786 (1948). "In short," said Justice Fuld, "to borrow from a typical opinion—to be occupational the disease must be one 'due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation; that is, those things which science and industry have not yet learned how to eliminate. Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease.' " [82 N.E.2d at 786–87.]

In the application of these rules, each disease must be linked with the process used by the employee by which the

disease is caused. Some examples are lead poisoning contracted in a process involving the use of a direct contact with lead, *Glodenis v. American Brass Co.*, 118 Conn. 29, 170 A. 146 (1934) relied on in *Herrera, supra* ; a station manager of a gasoline station who becomes disabled from breathing gasoline fumes, *Holman v. Oriental Refinery*, 75 N.M. 52, 400 P.2d 471 (1965); a miner who breathes into the lungs fine particles of silicon dust, *Vincent v. United Nuclear-Homestake Partners*, 89 N.M. 704, 556 P.2d 1180 (Ct.App.1976); *Simion v. Molybdenum Corporation*, 49 N.M. 265, 161 P.2d 875 (1945); *Aranbula v. Banner Min. Co.*, 49 N.M. 253, 161 P.2d 867 (1945); a painter exposed to certain paint fumes, *Herrera, supra* ; a telephone installer and repairman who contracted histoplasmosis from pigeon droppings and dead pigeons, *State ex rel. Ohio Bell Telephone Co., v. Krise*, 42 Ohio St.2d 247, 327 N.E.2d 756 (1975); a linotype operator who developed dermatitis due to fumes volatilized from melting antimony, *Le Lenko v. Wilson H. Lee Co.*, 128 Conn. 499, 24 A.2d 253 (1942) relied on in *Herrera, supra.* To illustrate this distinction ". . . pneumoconiosis resulting from wet grinding is an occupational disease, [citation omitted]; but pneumonia resulting from exposure incurred in highway construction is not." *Madeo v. I. Dibner & Bro.*, 121 Conn. 664, 186 A. 616, 105 A.L.R. 1408, 1411 (1936).

▮ On the other hand, an occupational disease does not include a disease which results from peculiar conditions surrounding the workmen's employment as long as the nature of that work is not more likely to cause the disability than other kinds of employment carried on under the same conditions. For example, a workman has not suffered an occupational disease when exposed to an infection in a factory under crowded and unsanitary conditions. *Madeo, supra.* Nor does occupational disease include a communicable disease contracted from a fellow employee, *Harman, supra;* nor to benzol poisoning caused by an employee in a car factory who ignorantly or negligently shut off ventilation and allowed the benzol to escape in a room, *Seattle Can Co. v. Department and Industries*, 147 Wash. 303, 265 P. 739 (1928); nor to a miner who breathes foul air in a mine wherein the employer failed to provide a safe place to work, *Gay v. Hocking Coal Co.*, 184 Iowa 949, 169 N.W. 360 (1918).

▮ The rules of law stated above, when applied to the two diseases alleged in the complaint, show that they are not "occupational diseases." A disease caused by harassment of male employees is not a natural incident of the employment. It is not linked with the process used by the employer by which the disease is caused, therefore, it is not an occupational disease.

▮ Lifting heavy objects while working on a loading dock is "peculiar to the occupation of plaintiff, i. e., a condition of employment to which all dock workers are subject." Nevertheless, other kinds of employment involve the lifting of heavy objects.

▮ An "occupational disease" does not include the ordinary disabilities of life such as a neurotic mental depression, curvature of the spine or arthritis to which the general public is exposed unless the claimant can allege and prove how and why that disability is peculiar to claimant's occupation. It must be distinguished from disabilities suffered by the general population. These diseases alleged are not "occupational diseases."

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concurring in result only.