GENERAL COOPERAGE COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Jesse James Streeter, Appellee.)

First District (Industrial Commission Division)   No. 1—95—2002WC

Opinion filed November 1, 1996.

McCULLOUGH, P.J., dissenting, joined by RAKOWSKI, J.

Jobin & Flynn, of Chicago (Mary Pat Donohue, of counsel), for appellant.

Paul J. Cronin, of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Jesse James Streeter, sought benefits under the Workers' Occupational Diseases Act (Ill. Rev. Stat. 1989, ch. 48, par. 172.36) for an alleged occupational disease resulting from or aggravated by his employment with General Cooperage, employer. The arbitrator awarded claimant temporary total benefits covering two separate periods of lost time in 1985 and 1988 and 25% of a man as a whole. On review, the Industrial Commission (Commission), in a split decision, reversed the award, finding claimant failed to prove the requisite causal connection. The circuit court of Cook County, in turn, reversed the decision of the Commission and remanded the matter, instructing the Commission to make express findings as to the date of disability and the amount of temporary total disability. The court also instructed the Commission to determine if claimant was entitled to recover permanent disability benefits. On remand, the Commission denied benefits in connection with the 1985 claim on the basis of the statute of limitations. With respect to the later claim, the Commission adopted the arbitrator's original award. The circuit court confirmed the Commission's decision on remand. Employer appeals, seeking reinstatement of the Commission's initial decision contending the circuit court erred in reversing the Commission's finding of no causal connection between claimant's employment and his condition of ill-being.

Claimant was born in 1950 and suffered from childhood asthma through the age of three. In 1968, claimant began working for employer on the loading docks. Employer manufactures fiber drums for storage of various substances. After three months, claimant moved to Mississippi and worked as a carpenter building mobile homes. In 1971, claimant returned to Illinois and went back to work for employer. Over the next two years, claimant worked on the loading docks and in the warehouse. In 1974, claimant was transferred inside the plant and assigned to work at the winder machine gluing paper together. Claimant remained at this job for the next 15 years. Claimant testified that at the end of his work day, his clothes would be covered with fibers, dust and glue. His nostrils and lungs were also filled with the same debris. Claimant was not provided with goggles, a respirator or protective clothing or shoes, and ventilation consisted of exhaust fans, which did not move the air very well. Claimant also reported that spray painting was conducted only 15

feet away from his station and that the testing operation, involving numerous solvents, was located 20 feet away.

In 1974, claimant sought treatment with Dr. Munoz for wheezing and weight loss. Claimant noticed he began wheezing two to three hours after arriving at work with the condition worsening as the day wore on. Not until he went home would claimant experience any relief from the wheezing. He also noticed he was starting to cough up a dark brownish-colored mucous. Dr. Munoz prescribed an inhaler, and in 1977, claimant underwent surgery on his sinuses. At some point, Dr. Munoz moved to a new office and claimant received various medications for his condition through Cook County Hospital.

In 1985, claimant was hospitalized for a week with status asthmaticus or the uncontrolled state of wheezing and shortness of breath. Claimant again sought treatment from Dr. Munoz, who kept claimant off work for some five months after his release from the hospital. Dr. Munoz also suggested that claimant, upon his return to work, should not be exposed to fumes which could aggravate his condition. Employer, however, reassigned claimant to the winder machine.

In 1988, claimant was again hospitalized for the same condition. This time claimant lost nine months of work. Upon his return to employer, claimant was transferred back to the loading dock and his pay was cut by one-third. Claimant, however, became ill again on April 24, 1989. Employer terminated claimant's employment three days later because of his recurring health problems and absences from work. Some two years after his last day of employment with employer, claimant testified he still experienced periodic wheezing although the wheezing has continually gotten better.

Dr. Jeffrey Coe, a doctor specializing in occupational medicine, examined claimant in November 1989 at the request of claimant's attorney. Dr. Coe opined claimant suffered from intrinsic asthma aggravated by the working conditions at employer's plant. After noting that the material safety data sheets for the various chemicals used at employer's plant all stated long-term exposure to the products could cause chronic respiratory problems, Dr. Coe believed claimant could never work with "pulmonary irritants" again. One of employer's experts certified in internal medicine and pulmonary diseases found no relation between claimant's asthma and any specific work exposure or activity and further determined claimant could work full duty with no restrictions. The fact claimant had not been treated for asthma since 1989 also indicated, according to employer's expert, that claimant had no permanent injury from any prior asthma episodes.

The ultimate question here was whether claimant suffered a compensable industrial loss. Employer contends that claimant was born with asthma and that this asthma was not triggered by work-related factors but rather by seasonal or other factors outside the work environment. Claimant believes employer's working conditions aggravated or caused his numerous chemical sensitivities, thereby prohibiting him from future employment anywhere he might be exposed to pulmonary irritants. Claimant further believes the repeated exposures have also caused him to suffer from a heightened sensitivity to pollens and cold air. The question whether claimant's condition was caused by or aggravated by the exposure to chemicals and fibers claimant confronted at his employment is a question of fact for the Commission to determine. See *Downs v. Industrial Comm'n*, 143 Ill. App. 3d 383, 388-89, 493 N.E.2d 595, 599 (1986). It is the function of the Commission to resolve disputed questions of fact, to draw permissible inferences and to decide which of conflicting medical views is to be accepted. *Beeler v. Industrial Comm'n*, 179 Ill. App. 3d 463, 466, 534 N.E.2d 408, 410 (1989); *Smith v. Industrial Comm'n*, 161 Ill. App. 3d 383, 391, 512 N.E.2d 712, 716 (1987). We, sitting as a reviewing court, are not to disturb the decision of the Commission unless such decision is contrary to the manifest weight of the evidence. *Beeler*, 179 Ill. App. 3d at 466, 534 N.E.2d at 410. In this instance, we have two Commission decisions. The first decision found no causal connection; the second awarded benefits. Given the circumstances presented, we must affirm the second decision. While we are reluctant to set aside a Commission decision on a factual question, we must not hesitate to do so when the clearly evident, plain and indisputable weight of the evidence compels an apparent, opposite conclusion. See *Montgomery Elevator Co. v. Industrial Comm'n*, 244 Ill. App. 3d 563, 567, 613 N.E.2d 822, 825 (1993).

Claimant suffered from childhood asthma through the age of three but had no other complications as a result of this condition until he began working for employer. Within a year of working at the winding machine, claimant began wheezing at work and coughing up a brownish-colored mucous. He came home every day covered with glue and fibers, and his nostrils and lungs were filled with the same debris. Claimant wore no protective clothing or goggles or respirator while doing his job. Yet, each of the material safety data sheets for the various chemicals used at employer's plant stated that long-term exposure to the products could cause chronic respiratory problems, particularly for those individuals with underlying bronchial asthma, and therefore recommended the use of respirators or other protective devices. Instead of quitting, claimant continued to

work for employer until he required hospitalization for status asthmaticus in 1985. Claimant remained off work for five months. Against doctor's orders, claimant was reassigned to the winder machine upon his return to work. In 1988, claimant again required hospitalization for the same condition. This time, however, claimant remained off work for nine months. Upon his return, he was moved back to the loading docks; yet, the irritants still affected him, requiring a third period of recuperation in 1989. Claimant's condition progressively worsened over the years to the point he developed chronic lung changes, including a heightened sensitivity to cold air and pollens. Dr. Coe recommended that claimant never be exposed to inhaled pulmonary irritants again. A compensable injury will be found upon a showing that a preexisting illness was aggravated or accelerated by conditions in the workplace. *Beeler*, 179 Ill. App. 3d at 466, 534 N.E.2d at 411; *Smith*, 161 Ill. App. 3d at 391-92, 512 N.E.2d at 717. It is evident here that the various substances used at employer's plant aggravated claimant's condition to the point he has become highly sensitized to all pulmonary irritants and has suffered permanent lung changes. As a result of his employment, claimant now suffers an occupational disease. To find otherwise, especially based on the somewhat misleading testimony of employer's experts, would be contrary to the manifest weight of the evidence. None of employer's experts were aware to what extent claimant was exposed to the various substances and, in some instances, to what substances he was even exposed.

Accordingly, we affirm the decision of the circuit court of Cook County confirming the decision of the Commission on remand.

Affirmed.

COLWELL and HOLDRIDGE, JJ., concur.

PRESIDING JUSTICE McCULLOUGH, dissenting:
I respectfully disagree. The first decision of the Commission was not against the manifest weight of the evidence.

In its first decision, the Commission properly noted that there was competing and conflicting expert medical testimony. The Commission refers to the testimony of Dr. Buckingham. He found:

> "Pulmonary function testing was essentially normal. ***[T]here was no expression of the disease present at the examination, and there was nothing to indicate that Petitioner could not return to his normal work activities. There was no indication present of any permanent disability."

The Commission also found that Dr. McFee "opined that there was no evidence to indicate that Respondent's plant conditions were a factor in the aggravation or trigger of Petitioner's asthma." The Commission refers also to Dr. Aaronson's conclusions that claimant's condition is "unrelated to his work exposure," "[p]ulmonary function studies were essentially normal," and "Petitioner should be allowed to return to work."

Although the Commission in its first decision could, as fact finder, have found in favor of the claimant, it did not. The first decision should be reinstated.

RAKOWSKI, J., joins in this dissent.