YATES, Judge.
Elbert Mark Herchenhahn sued his employer, Amoco Chemical Company, on July 14, 1993, seeking to recover workers’ compensation benefits for an alleged nervous breakdown he claimed to have suffered during the course of his employment. Amoco moved for a summary judgment, arguing that there was no genuine issue of material fact as to a physical injury or to a causal connection between Herchenhahn’s neurosis and a physical injury sustained by him while employed by Amoco. The court entered a summary judgment in favor of Amoco, stating that Amoco was “entitled to a summary judgment because [Herchenhahn’s] alleged psychological impairment ... is not compen-sable under [Alabama law].” Herchenhahn appeals.
At the outset, we note that in reviewing the disposition of a motion for a summary judgment, we use the same standard as the trial court in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Grider v. McKenzie, 659 So.2d 612 (Ala.Civ.App.1994); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Herchenhahn was employed as a computer systems administrator at Amoco’s plant in Decatur. David Patterson became Herchen-hahn’s supervisor in 1989. Herchenhahn alleges that Patterson harassed him and that as a result of the harassment he suffered a nervous breakdown at work on July 17,1991. Herchenhahn asserts that the nervous breakdown encompassed occupational stress disorder, which, he says, resulted in temporary and permanent memory loss. He further alleges that before the nervous breakdown he had suffered from chest pains, breathing difficulties, and stomach problems. Her-chenhahn asserts that, as a result of his condition, he has been rendered permanently disabled.
This case presents an issue of first impression in this state — whether mental or nervous disorders, including occupational stress disorder, which result from harassment experienced on the job, are compensable as occupational diseases under § 25-5-110(1), Ala. Code 1975. Herchenhahn did not allege in his complaint that his nervous breakdown, encompassing occupational stress disorder, was the result of a physical injury suffered on the job; however, he argued, in response to Amoco’s motion for a summary judgment, *849 that he had suffered from an “occupational disease,” as that term is defined in § 25-5-110(1), Ala.Code 1975.
Because Herehenhahn’s alleged breakdown occurred on July 17, 1991, the definition of “occupational disease” contained in the Workmen’s Compensation Act before the 1992 amendments is applicable. That definition read:
“(1) OCCUPATIONAL DISEASE. A disease arising out of and in the course of employment, other than occupational pneu-moconiosis and occupational exposure to radiation as defined in articles 5 and 7, respectively, of this chapter, which is due to hazards in excess of those ordinarily . incident to employment in general and is peculiar to the occupation in which the employee is engaged but without regard to negligence or fault, if any, of the employer. A disease, including, but not limited to, loss, of hearing due to noise, shall be deemed an occupational disease only if caused by a hazard recognized as peculiar to a particular trade, process, occupation, or employment as a direct result of exposure, over a period of time, to the normal working conditions of such trade, process, occupation, or employment. The term ‘occupational disease’ shall not include accidents within the meaning of articles 3, 5 and 7 of this chapter.”
§ 25-5-110(1), Ala.Code 1975. For a disease to be classified as occupational, it must derive from hazards that are (1) in excess of those ordinarily incident to employment in general, and (2) different in character from those found in the general run of occupations. Clark v. Russell Corp., 671 So.2d 677 (Ala.Civ.App.1995), cert. quashed, 671 So.2d 680 (Ala.1995). Stated another way, “the disease must be contracted from or aggravated by exposure to a hazard which is recognized as peculiar to the normal working conditions of the employee’s particular occupation.” Smith v. Colonial Bank, 607 So.2d 1265, 1267 (Ala.Civ.App.1992). See also, Young v. City of Huntsville, 342 So.2d 918 (Ala.Civ.App.1976), cert. denied, 342 So.2d 924 (Ala.1977). To recover benefits for an occupational disease, the employee must prove that the disease arose out of and in the course of his employment. § 25-5-110(1), Ala.Code 1975.
Courts in other jurisdictions have dealt with the issue of whether mental disorders, resulting from on-the-job harassment are compensable as occupational diseases. In Davis v. Dyncorp, 336 Md. 226, 647 A.2d 446 (1994), the employee, a computer operator, sued to recover workers’ compensation benefits. He alleged that, as a result of continuous harassment from management and fellow employees, he had experienced restlessness, sleeping problems and headaches and had developed posttraumatic stress syndrome. He contended that he was entitled to benefits because, he claimed, he had suffered a disabling occupational disease. The Maryland Court of Appeals held that the posttraumatic stress syndrome suffered by the employee as a result of alleged harassment was not com-pensable under the state’s occupational disease statutes, because harassment is not a hazard within the nature of the employee’s job as a computer operator. The court stated:
“[W]e hold that [the employee’s mental disease] is not compensable ... because it was not ‘due to the nature of an employment in which hazards of the occupational disease exist.’ Given its ordinary meaning, the word ‘nature’ means ‘[a] kind, sort, type, order; general character.’ ... Thus, the question becomes whether mental disease caused by his job harassment may be reasonably characterized as due to the general character of [the employee’s] employment. We believe that it cannot.
“[The employee] was employed as a computer operator, which entailed, among other tasks, the entry of data. According to [the employee], he spent about 80% of his day entering data, and the other 20% of the day preparing paperwork, answering the telephone, and reading manuals and other publications. We agree with the circuit court’s observation that ‘[h]arassment by fellow employees is n[ot] a hazard within the nature of the employment of a computer data operator....’ We see nothing peculiar to [the employee’s] duties as a computer operator that made him more *850 susceptible to harassment than in any other kind of employment.”
Id., 336 Md. at 236-37, 647 A.2d at 451 (citations omitted). In Marable v. Singer Business Machines, 92 N.M. 261, 586 P.2d 1090 (Ct.App.1978), the employee alleged that she had suffered severe neurotic mental depression as the result of harassment from her male co-employees. The court stated:
‘“[T]hus an occupational disease is one which results from the nature of the employment, and by nature is meant, not those conditions brought about by the failure of the employer to furnish a safe place to work, but conditions to which all employees of a class are subject, and which produce the disease as a natural incident of a particular occupation, and attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of the hazard attending employment in general.’ ”
Id., 92 N.M. at 262, 586 P.2d at 1091, quoting Goldberg v. 954 Marcy Corp., 276 N.Y. 313, 318, 12 N.E.2d 311, 313 (1938) (emphasis omitted). In holding that the employee’s disease was not an occupational disease and denying the employee benefits, the Marable court stated: “A disease caused by harassment of male employees is not a natural incident of the employment. It is not linked with the process used by the employer by which the disease is caused, therefore, it is not an occupational disease.” 92 N.M. at 263, 586 P.2d at 1092.
Herchenhahn’s primary duty as a computer systems administrator was to ensure that the computer services were available to Amoco employees a minimum of 92% of the time. He handled the day-to-day operations with the computer operations staff, which involved working with other employees, “working with communications, working with computer operations, and helping schedule tasks that [were] done in the computer room, etc.” After carefully reviewing the record, we conclude that there is nothing peculiar about Herchenhahn’s employment as a computer systems administrator that made him more susceptible to harassment by a supervisor than he would have been in any other kind of employment, and that harassment by a supervisor is simply not “a hazard which is recognized as peculiar to the normal working conditions of [Herehenhahn’s] particular occupation.” Smith, supra, at 1267. Accordingly, Amoco was entitled to a judgment as a matter of law on Herchenhahn’s claim for workers’ compensation benefits.
We point out that we in no way condone such harassment as Herchenhahn says he experienced; we simply hold that it is not compensable under our Workers’ Compensation Act. However, if Herchenhahn has indeed suffered the harassment he alleges, he is not without recourse, and, in fact, the record indicates that he has filed a tort action seeking damages from Amoco for that harassment. We also point out that whether a mental disorder resulting from on-the-job stress or harassment is compensable as an occupational disease is one to be addressed by our Legislature, as the proper policy-making body.
AFFIRMED.
ROBERTSON, P.J., and MONROE and CRAWLEY, JJ., concur.