Karen Couch sued her former employer, Rainbow City ("the City"), seeking workers' compensation benefits pursuant to the Alabama Workers' Compensation Act § 25-5-1 et seq., Ala. Code 1975 ("the Act"), based on an alleged occupational disease. Specifically, Couch alleged in her complaint that she suffered post-traumatic stress disorder ("PTSD") and "occupational depression" in the line and scope of her employment as a police dispatcher for the City. Couch later amended her complaint to allege that the events causing her PTSD that were set forth her initial complaint also caused a physical injury under the Act. The City answered and denied liability.
Shortly after filing its answer, the City filed a motion for a summary judgment. In support of the summary-judgment motion, the City submitted the deposition testimony of Couch; the deposition testimony of Dr. Daniel Doleys, a clinical psychologist; and the deposition testimony of Dr. Billy McCroskey, a vocational expert, and the corresponding exhibits to those depositions. Couch filed a response. Following a hearing on the motion, the trial court entered a summary judgment in favor of the City, stating, in part, that "no evidence has been presented to show that [Couch] suffered any physical injury which resulted in the mental and emotional problems from which she allegedly suffers." Couch filed a postjudgment motion. The trial court denied that motion, and Couch timely appealed.
The undisputed facts presented to the trial court indicate that Couch was 49 years old at the time of the hearing in this matter; she has a high-school education. Couch worked for the City for 20 years. During her employment with the City, Couch worked as a dispatcher and switchboard operator. In that capacity, Couch received 911 emergency telephone calls and calls for the local fire department. Couch's job also required her to dispatch assistance for medical emergencies by performing "emergency medical dispatch" over the telephone. Her typical work schedule required her to work eight and one-half hour shifts, six days a week, followed by three days off. Couch earned $11.46 per hour at the time that she was terminated from her employment with the City in April 2002. At the time of the hearing in this matter, Couch was unemployed. *Page 774 
In her complaint, Couch focuses on two incidents that she alleges caused her to suffer from PTSD, anxiety, and depression. In October 1998, while working as a dispatcher for the City, Couch received a call involving three police officers serving on a drug task force who were in need of medical assistance. One of the officers had been shot and killed, while another had lost a leg. In a separate incident in 2001, the remaining, uninjured officer involved in the 1998 incident, Roy, called Couch, in her capacity as a dispatcher, to request medical assistance for himself. Roy committed suicide before medical personnel could reach him. Couch testified that she was particularly close to Roy and the other injured police officer involved in the 1998 incident. Couch was not physically injured as a result of the 1998 and 2001 incidents, and she showed no signs of a physical injury associated with the development of her psychological problems.
Couch testified that her job as a dispatcher was very stressful at all times. Couch recounted separate incidents in which she had received a call from a man who died from a heart attack while talking to her, a call from a teenager who committed suicide, and a call that a baby had died. After the 2001 incident, Couch approached a superior and inquired about counseling. On January 8, 2002, Couch had what she called an "emotional breakdown"; she did not return to work after that day. Couch attended counseling regularly for five months following her breakdown. Couch testified that there are no lingering effects from her breakdown and that no restrictions have been imposed on her that prevent her from returning to work.
Couch has a history of psychological problems. In 1995, Couch sought help from a psychologist after her stepson threatened her life. Couch began taking prescription medication after that incident; she regularly took Effexor and Xanax for six years following the incident with her stepson. However, Couch returned to work after that incident.
Dr. Daniel Doleys, a clinical psychologist, conducted an evaluation of Couch in February 2003 and April 2003. Following his evaluation, Dr. Doleys concluded that Couch met the criteria for PTSD; he observed that Couch had not been physically injured. Dr. Doleys noted that the precipitating stimulus for the PTSD was the death of the police officer in 1998 and the suicide of Roy. He further explained that Couch's exposure to stress precipitated the PTSD. Dr. Doleys testified that an abusive relationship and threats of death or bodily harm could also contribute to PTSD. According to Dr. Doleys, Couch had been in an abusive relationship in her first marriage,[1] and she had been threatened with physical harm by her stepson.
According to Dr. Doleys, Couch appeared motivated to return to "functioning" but could suffer a relapse. Dr. Doleys opined that Couch would be at a greater risk of relapsing if she returned to work as a dispatcher for the City. Dr. Doleys noted that PTSD has not been classified as a disease. Dr. Doleys opined that, in her employment as a dispatcher, Couch was exposed to experiences and encounters in excess of those ordinarily incident to employment in general. Dr. Doleys testified that he believed Couch had not reached maximum medical improvement.
Dr. Billy McCroskey, a vocational expert and a rehabilitation economic consultant, testified that Couch's job as both a dispatcher and telecommunicator exposed Couch to stress greater than that found in *Page 775 
other employment or occupations generally. Dr. McCroskey referred to The Dictionary of Occupational Titles in reaching his conclusion. According to that book, the dispatcher and telecommunicator positions are both identified as occupations with "significant" amounts of stress. Dr. McCroskey noted that he did not consider or compare the stress of a dispatcher in a large city versus that of a dispatcher in a small city. He further admitted on cross-examination that death or serious injury to a coworker is possible in any job.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala. 1988). "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184
(Ala. 1999) (quoting Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989)). "Substantial evidence" is "evidence of such a weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant. Hanners v.Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990).
Couch first argues on appeal that the trial court erred by misconstruing Article 4 of the Act to require a party seeking compensation for an alleged occupational disease to demonstrate a physical injury. Specifically, Couch asserts that the trial court's judgment finding that Couch did not suffer a "physical injury" demonstrates the trial court's failure to distinguish between an occupational disease and a nonoccupational injury. We disagree.
As noted earlier, Couch's initial complaint sought relief under the Act for an alleged occupational disease. She later amended her complaint to include a request for relief on the basis of a physical injury. Couch correctly points out on appeal that an employee can petition for relief under alternate theories. SeeCity of Hoover v. Phillips, 895 So.2d 992 (Ala.Civ.App. 2004) (recognizing that a claimant can assert claims for benefits under Article 3 and Article 4 of the Act). In its judgment, the trial court specifically addressed the failure of Couch to demonstrate a physical injury. "Under Alabama law, for an employee to recover for psychological disorders, the employee must have suffered a physical injury to the body and that physical injury must be a proximate cause of the psychological disorders." Ex parteVongsouvanh, 795 So.2d 625, 628 (Ala. 2000). It is undisputed that Couch did not suffer a physical injury and that no physical injury contributed to her PTSD. While the judgment of the trial court denying Couch's claim for workers' compensation benefits pursuant to Article 3 of the Act is due to be affirmed, this court has previously held that a trial court's judgment awarding benefits will be affirmed if the evidence supports an award undereither Article 3 or Article 4. City of Hoover v. Phillips, supra. Therefore, we will address Couch's claim for workers' compensation benefits on the basis of an alleged occupational disease pursuant to Article 4 of the Act. *Page 776 
Regardless of the trial court's express finding of no physical injury, Couch contends on appeal that she presented substantial evidence that she suffered from an occupational disease. An occupational disease is defined as "[a] disease arising out of and in the course of employment . . ., which is due to hazards in excess of those ordinarily incident to employment in general and is peculiar to the occupation in which the employee is engaged." § 25-5-110(1), Ala. Code 1975.
 "For a disease to be classified as occupational, it must derive from hazards that are (1) in excess of those ordinarily incident to employment in general, and (2) different in character from those found in the general run of occupations. Clark v. Russell Corp., 671 So.2d 677 (Ala.Civ.App. 1995), cert. quashed, 671 So.2d 680 (Ala. 1995). Stated another way, `the disease must be contracted from or aggravated by exposure to a hazard which is recognized as peculiar to the normal working conditions of the employee's particular occupation.' Smith v. Colonial Bank, 607 So.2d 1265, 1267
(Ala.Civ.App. 1992). See also, Young v. City of Huntsville, 342 So.2d 918 (Ala.Civ.App. 1976), cert denied, 342 So.2d 924 (Ala. 1977). To recover benefits for an occupational disease, the employee must prove that the disease arose out of and in the course of his employment. § 25-5-110(1), Ala. Code 1975."
Herchenhahn v. Amoco Chem. Co., 688 So.2d 847, 849
(Ala.Civ.App. 1997).
In Herchenhahn v. Amoco Chemical Co., supra, Herchenhahn sued for workers' compensation benefits alleging that he suffered a nervous breakdown, encompassing an occupational-stress disorder, as a result of harassment at work. Amoco moved for a summary judgment; the trial court entered a summary judgment in favor of Amoco finding that Herchenhahn's alleged psychological impairment was not compensable under Alabama law. Herchenhahn appealed.
As an issue of first impression, this court addressed "whether mental or nervous disorders, including occupational stress disorder, which result from harassment experienced on the job, are compensable as occupational diseases under § 25-5-110(1), Ala. Code 1975." Herchenhahn, 688 So.2d at 848. This court answered that question in the negative and held that Herchenhahn's claim for workers' compensation benefits on the basis of an occupational-stress disorder was not compensable as an occupational disease under Alabama law. In so holding, the court reasoned that there was "nothing peculiar about Herchenhahn's employment . . . that made him more susceptible to harassment by a supervisor than he would have been in any other kind of employment." 688 So.2d at 850. The court also noted that the harassment did not present a hazard peculiar to the working conditions of Herchenhahn's particular occupation.688 So.2d at 850.
Like the employee in Herchenhahn, Couch claimed that she suffered a nervous breakdown during the course of her employment that lead to an occupational-stress disorder. Couch attributed her nervous breakdown and PTSD to two specific incidents involving the death of a police officer and the suicide of another police officer. The vocational expert, Dr. McCroskey, testified that death or serious injury to a coworker is possible in any job. After carefully reviewing the record and the evidence provided by Couch and the City, we cannot say that the death and injury of Couch's coworkers is "a hazard which is recognized as peculiar to the normal working conditions" of Couch's job as a police dispatcher. Therefore, a summary judgment was proper on Couch's *Page 777 
claim for workers' compensation benefits under Article 4 of the Act.
AFFIRMED.
YATES, P.J., and PITTMAN, J., concur.
CRAWLEY and MURDOCK, JJ., concur in the result, each with writing.
[1] Couch married her first husband in 1972 and divorced him in 1978.