663 P.2d 379

**Myrl STEBENS, Plaintiff-Appellee,**

**v.**

**K–MART CORPORATION and K–Mart Corporation Insurance, Defendants-Appellants.**

**No. 5944.**

Court of Appeals of New Mexico.

April 7, 1983.

Certiorari Denied May 17, 1983.

Stephen Bridgforth, Sage, Reese & Bridgforth, Las Cruces, for appellee.

Paul M. Bohannon, Michele A. Drexler, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, for appellants.

## OPINION

BIVINS, Judge.

From a judgment awarding plaintiff compensation and other benefits, defendants appeal. We affirm.

Defendants raise two issues: First, that they were entitled to judgment as a matter of law, because plaintiff, at the time of his injury, was engaged in activities in violation of express instructions; and, second, that the trial court's findings that plaintiff's injuries arose out of and in the course of his employment, and that plaintiff was not in violation of any specific instruction limiting the scope or sphere of the work he was authorized to do, were not supported by substantial evidence. Since defendants' claims essentially attack the evidence supporting the trial court's findings, these two issues will be discussed together.

At the time of his accident, on May 9, 1981, plaintiff was employed as security manager for defendant K–Mart Corporation (K–Mart). On that date plaintiff received, over the public address system, an "emergency code" call to come to the front of the store. As he approached the front of the store, a co-worker informed plaintiff that a man had stolen a t.v. and had just left the store. Plaintiff observed a man with a t.v. set under his arm running away from the store with several employees in pursuit. Because the shoplifter was outrunning his pursuers, plaintiff got on his motorcycle and proceeded to apprehend the man. When the shoplifter stepped in front of the motorcycle, plaintiff "laid the motorcycle down to avoid hitting him." Plaintiff then pursued the fleeing shoplifter on foot, and when the latter turned with his fist clenched in a swinging motion, a gesture plaintiff interpreted to be a punch, plaintiff ducked and dove at the man, wrestling him to the ground. An hour later plaintiff felt pain in his right shoulder.

Because of five prior injuries, some of which involved the shoulder, and a physician's warning following a reinjury to the shoulder on November 6, 1979, K–Mart's main office directed the store manager to instruct plaintiff to avoid physical contact and situations which might lead to physical contact. In carrying out this directive, the store manager conducted an interview with plaintiff memorialized by a written interview record containing the following summary of discussion:

·The Company is very concerned about injuries because of physical confrontations with shoplifters. Our Company policy is that where you feel *action might be dangerous* to you, let the police handle the problem or request additional assistance from male employees on duty in the store. (Emphasis added).

This interview took place on June 13, 1980, and the record was signed by the plaintiff and the store manager and witnessed by the assistant store manager.

Relying primarily on the recent Supreme Court case of *Lukesh v. Ortega,* 95 N.M. 444, 623 P.2d 564 (1980), defendants argue that a worker who is injured while engaging in conduct contrary to express instructions, limitations or restrictions is not entitled to compensation benefits. The fact that a worker, at the time of injury, was disobeying an instruction from his employer may, under some circumstances, deprive him of the right to compensation, either on the ground that the injury did not arise out of or in the course of employment, *Walker v. Woldridge,* 58 N.M. 183, 268 P.2d 579 (1954), or on the ground that doing the prohibited act constitutes "willful" misconduct. *Gough v. Famariss Oil and Refining Company,* 83 N.M. 710, 496 P.2d 1106 (Ct. App.1972). We hold that the trial court properly applied these principles to the facts of this case.

To better understand the distinctions between this case and those cited, additional facts are required. The store manager testified that due to plaintiff's exceptional performance as security manager, the store's losses from shoplifting had been reduced $30,000 a year. Plaintiff testified that while he was security manager approximately 3,000 shoplifters had been prosecuted, an average of 400–450 a year. The store manager had praised plaintiff for

his work and awarded bonuses to employees who assisted in apprehending shoplifters. According to plaintiff, the store manager wanted the word to get out on the "street" that K–Mart was tough on shoplifters. That information was conveyed to plaintiff both before and after the interview of June 13, 1980. Also, plaintiff was told by the store manager after the interview that "he didn't want any son-of-a-bitch to get out of the store if I could keep him from doing it." In one specific instance subsequent to the interview, when plaintiff had physical contact with a shoplifter, he testified the store manager told him, "I should have broken his * * * jaw."

Not only does this evidence provide a sufficient basis for the trial court's finding that plaintiff did not violate any specific instruction, the document memorializing the interview is susceptible of more than one meaning. While it may be clear that the main office of K–Mart did not want to accept any further responsibility for plaintiff's shoulder and, thus, directed the store manager to instruct plaintiff to avoid physical contact and situations that could lead to physical contact, what transpired at the interview is not that clear. Plaintiff's understanding was that he should avoid physical confrontations if possible. The store manager testified that plaintiff made a good faith effort to comply but conceded that any given situation would require a judgmental decision regarding the best course to follow. He expected plaintiff to defend himself if attacked. While there is a conflict as to whether the shoplifter was making a threatening gesture toward plaintiff or was in a defensive surrendering stance, the fact remains that plaintiff exercised his judgment in tackling the man, because he believed he was going to be hit.

The summary-of-interview exhibit is subject to more than one meaning. It says that where plaintiff feels "action might be dangerous" he should call the police or request assistance from male employees. At the close of the case, the court noted that the language was somewhat ambiguous. We agree. "[D]angerous" as used could easily be interpreted to mean that plaintiff was to call for assistance from the police or fellow employees if his life was in jeopardy.

In *Lukesh* the employer instructed the claimant, who had suffered a prior back injury, that his job duties did not include any heavy lifting, specifically referring to the troweling machine. He violated the instruction by lifting the troweling machine and injured his back. Lifting the machine was not a part of the claimant's job responsibilities. In contrast, plaintiff's job responsibilities did include dealing with shoplifters, and he was authorized, when necessary for his own safety, to defend himself. According to plaintiff's testimony, he defended himself based on the actions of the shoplifter and his belief that the shoplifter intended to strike him. Plaintiff did not have time to make a clear-cut, deliberate decision as did the claimants in *Lukesh* and *Walker v. Woldridge* (claimant handled tear gas gun contrary to express instructions). Moreover, in those cases the claimants did not deny the instructions nor was there doubt as to their meaning.

In reviewing the trial court's findings, we consider the evidence and reasonable inferences that may be drawn therefrom in the light most favorable to support them. *Moorhead v. Gray Ranch Co.,* 90 N.M. 220, 561 P.2d 493 (Ct.App.1977). An inference can be drawn from the facts that while K–Mart wanted to avoid further responsibility for injury to plaintiff's shoulder, at the same time it was not willing to give up the aggressive and financially successful security program initiated and implemented by plaintiff. Under these circumstances it was foreseeable that, notwithstanding the instructions, plaintiff could at some time be in a position where some degree of physical force would be deemed necessary. To allow compensation would not, under the facts here, be contrary to the holding in *Lukesh.*

We do not weigh the evidence or determine the credibility of witnesses; that is the function of the trier of facts. *Marez v. Kerr-McGee Nuclear Corp.,* 93 N.M. 9, 595 P.2d 1204, 597 P.2d 1178 (Ct.App.1978).

Based on a review of the record, we hold that the trial court's findings are supported by the evidence, and the judgment should be affirmed. Attorney fees of $1200 are awarded plaintiff for the services of his attorney on appeal.

IT IS SO ORDERED.

WALTERS, C.J., and LOPEZ, J., concur.