2007-NMCA-028

154 P.3d 64

Andre GRIMES, Worker–Appellant,

v.

WAL–MART STORES INC. and American Home Assurance Company, Employer/Insurer–Appellees.

No. 26,634.

Court of Appeals of New Mexico.

Jan. 29, 2007.

Certiorari Denied, No. 30,248, March 6, 2007.

Patrick Larkin Fogel, Albuquerque, NM, for Appellant.

Kelly A. Genova, Kelly A. Genova P.C., Albuquerque, NM, for Appellees.

## OPINION

SUTIN, Chief Judge.

{1} Because of work restrictions based on a prior compensable injury while working for Employer, Wal–Mart Stores Inc., Worker Andre Grimes accepted employment as a "greeter" for Employer. In that capacity, Worker apprehended a customer carrying a box after a security alarm went off indicating that the customer was leaving the store without having paid for the merchandise. Allegedly injured in the process of apprehending the customer, whom Worker took to the floor and handcuffed, Worker sought workers' compensation benefits.

{2} The workers' compensation judge (WCJ) specifically found:

25. Worker's primary duties were to greet customers on their way into the store, help them with directions and returns, say good-bye to them when they left, and check receipts periodically, primarily of larger items not in bags.

26. If greeters suspected a shoplifter, or had a customer go by without showing a receipt, they were first to call security or management; most greeters had radios, but there was also a "house" phone just a few feet away as well as cashiers.

27. Greeters were not trained in security issues, including the four elements of apprehension, because they were not part of the security chain-of-command, nor did they have responsibility for security.

28. Louis R. Maez, a fellow greeter who provided some orientation for Worker, told him he should use his judgment, be courteous, not confrontational, and never touch the customer.

29. A written description of greeter job duties was provided to Worker when he accepted his return to work offer, as shown in [the job description for people greeter].

30. While it may be true that no one specifically told Worker not to use handcuffs and not to tackle customers, Employer had a right to expect that Worker would perform within the assignment provided to him.

31. Handcuffs were not part of the equipment issued to greeters, including Worker, and the use of them was prohibited by store policy except by certain trained personnel, of which Worker was not one.

32. Greeters were not to follow the customers; if Worker really believed it was part of his job to keep the product from leaving the store, when the box fell he could have retrieved the box and let the man go, but he did not.

{3} The written description Worker was given of the job of people greeter reads in pertinent part as follows:

Primary job responsibilities and functions are listed below. An Associate in this position will be expected to perform additional job-related responsibilities and duties throughout the facility as assigned and/or as necessary.

Operations

* Greets, communicates, and responds to Customer questions; locates merchandise; provides shopping and motorized carts; provides requested assistance with merchandise returns; deactivates security tags; and checks receipts.

* Stops Customers whose merchandise activates the alarm, compares merchandise to purchase receipt, and accurately maintains a log of the event.

* Monitors entrances and exits for signs of shrink and potential security risks and contacts management and/or In-Store Loss Prevention when problems are identified. Responds appropriately to emergency codes.

* Ensures a safe and clean environment by maintaining safety standards, performing maintenance, and cleaning as needed.

* Distributes Company-approved marketing or promotional materials, such as smiley face stickers.

* Demonstrates knowledge and understanding of appropriate responses to emergency codes.

One of a greeter's "Essential Functions" of the job was: "Constantly monitors entrances and exits for signs of shrink and potential security risks," involving "[m]onitoring areas for signs of shrink or potential security risks and contacting management or In-Store Loss Prevention when appropriate." "Shrink" is a term for loss of merchandise through shoplifting.

{4} Employer had a written shoplifter apprehension policy. Worker submitted a requested finding of fact stating that he had never been shown Employer's shoplifter apprehension policy. Employer's "Shoplifter Apprehension" policy states, in pertinent part: "Only the Store or Club Manager, Co-Manager, Assistant Manager, Support Team Member acting in the capacity of management, or approved Loss Prevention personnel are authorized to apprehend a shoplifter."

{5} Worker appeals the finding of the WCJ that "Worker's accident did not arise

out of his employment with Employer; it did not occur within the course and scope of his employment with Employer as a greeter."

## Standard of Review

{6} On appeal from workers' compensation cases decided by the Workers' Compensation Division, we review the sufficiency of evidence to support conclusions according to the whole record review standard. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The reviewing court views the evidence in the light most favorable to the agency decision, but it may not view favorable evidence with total disregard to contravening evidence.

*Garcia v. Homestake Mining Co.*, 113 N.M. 508, 510, 828 P.2d 420, 422 (Ct.App.1992) (internal quotation marks and citations omitted).

## Legal Requirements

{7} "In order for an injured employee to receive compensation under the [Workers' Compensation] Act, the employee must be performing a service arising out of and in the course of his employment at the time of the accident, and the injury must arise out of and in the course of his employment." *Id.* "[A]n injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Id.* at 511, 828 P.2d at 423 (internal quotation marks and citation omitted).

{8} "Violation of specific instructions which limit the scope or sphere of work which an employee is authorized to do bars recovery of [workers'] compensation for an injury so sustained." *Gough v. Famariss Oil & Refining Co.*, 83 N.M. 710, 714, 496 P.2d 1106, 1110 (Ct.App.1972) (internal quotation marks and citation omitted); *see also Stebens v. K–Mart Corp.*, 99 N.M. 720, 721, 663 P.2d 379, 380 (Ct.App.1983) ("The fact that a worker, at the time of injury, was disobeying an instruction from his employer may, under some circumstances, deprive him of the right to compensation, either on the ground that the injury did not arise out of or in the course of employment, or on the ground that doing the prohibited act constitutes 'willful' misconduct." (citation omitted)).

## Employer's Policies and Instructions, and Worker's Conduct

{9} We see nothing in the record indicating that Worker was given, shown, or knew about specific instructions as to Employer's written policy on apprehension of shoplifters. Worker testified that his job instructions were to stop customers and check receipts and merchandise if the security system at the store exit beeped, or if the merchandise was not in a bag. He further testified that he was never told about any regulation in regard to permitting shoplifters to leave the store and was never trained in any procedures on stopping shoplifters. He testified about a "Code 99," which was an Employer procedure that obligated male employees to leave their stations and assist other employees when there was a security-type event involving a shoplifter. He also testified that another employee first stopped the customer in question. Defendant was not given a radio for use to call store security personnel. Although Worker has not specifically attacked the WCJ's finding that Maez told Worker to be courteous, not confrontational, and never touch a customer, our review of Maez's deposition testimony and of Worker's testimony indicates that there is no such evidence.

{10} Maez testified that he did not receive training from Employer in security procedures and policies, that "[w]e had to use our own judgment as far as security," and that using your own judgment was the standard. As a greeter, he did not let suspected shoplifters through the door without a receipt. As a greeter, Maez would approach a suspected shoplifter and ask to check the person's receipt. Security personnel were not always available to deal with shoplifters that greeters stopped. Maez was unaware of any rules regarding instances in which a suspected shoplifter evades or attacks. If Maez was positive he was dealing with a shoplifter, he would call a store manager. Maez had never

seen Employer's shoplifter apprehension policy. The WCJ found that Maez provided "some orientation for Worker," and "told [Worker] he should use his judgment."

{11} When asked by Employer's counsel what a greeter was supposed to do when somebody tried to leave with merchandise and no receipt, Employer's loss prevention supervisor and head of security stated: "It's kind of one of those interesting kind of things, they have to ask for a receipt—if they cannot produce the receipt, they are supposed to not let the merchandise leave, but the catch 22 in that is that they can't physically touch the person if this person is going to walk out."

{12} Neither the job description of "greeter" nor the head of security's statement clearly indicates that it is a policy of Employer that a greeter is not to apprehend a shoplifter as Worker did in this case. Nothing in the written job description states that a greeter must first or only call security or management when a customer sets off the security alarm indicating that the customer needs to show a receipt. Nothing in the record shows that Worker was told about or trained with respect to any such greeter policy or procedure.

{13} On the record as a whole, we fail to see sufficient evidentiary support for a finding or conclusion that Worker disobeyed or violated any clear and specific Employer policy or instruction given to Worker, or any clear and specific policy or procedure of which Worker was aware that limited the scope or sphere of work he was authorized to do as a greeter that prohibited him from apprehending a shoplifter as he did in this case. Nor do we see any evidentiary basis in the record to support a finding or conclusion that Worker's actions were anything other than a good faith exercise of judgment in attempting to serve Employer's interests.

## CONCLUSION

{14} We reverse the compensation order of the WCJ and hold that, on the record as a whole, Worker's accident did arise out of and occurred within the course and scope of his employment.

{15} **IT IS SO ORDERED.**

WE CONCUR: CYNTHIA A. FRY and MICHAEL E. VIGIL, Judges.