**Certiorari Denied, July 19, 2012, No. 33,675**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-085**

**Filing Date: May 30, 2012**

**Docket No. 31,499**

**SONYA CASTILLO, Personal Representative
over the Estate of ALFREDO CASTILLO,
individually, and as next friend of the minor
children, BRIAN LOPEZ, CHRISTIAN
CASTILLO, and JULISSA CASTILLO,**

     **Plaintiffs-Appellants,**

**v.**

**CAPROCK PIPE & SUPPLY, INC.,**

     **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
William G.W. Shoobridge, District Judge**

Max Houston Proctor
Hobbs, NM

Dick Blenden
Carlsbad, NM

for Appellants

Miller Stratvert P.A.
Erica R. Neff
Timothy R. Briggs
Albuquerque, NM

for Appellee

**OPINION**

1

**KENNEDY, Judge.**

{1}     The sole issue before us today is whether the injury and resulting death of a worker caused by a disease contracted from pigeons roosting in the warehouse where he worked falls within the exclusivity provisions of the Workers' Compensation Act (Act), NMSA 1978, §§ 52-1-1 to -70 (1987, as amended through 2007), or the Occupational Disease Disablement Law (Disablement Law), NMSA 1978, §§ 52-3-1 to -60 (1945, as amended through 2003).   In this case, Alfredo Castillo contracted psittacosis from exposure to roosting pigeons while working as a warehouse laborer at Caprock Pipe & Supply, Inc. (Defendant).  As a result of the disease, Castillo died.  Castillo's estate, wife, and children (Plaintiffs) brought a wrongful death action on Castillo's behalf against Defendant for damages.

{2}     Caprock moved to dismiss the case on the ground that it was barred by the exclusivity provisions of the Act and the Disablement Law.  The district court dismissed the case, holding that the allegations of Plaintiffs' complaint fell within the exclusivity provisions of either law.  For reasons explained below, we conclude that Castillo's injury and death do not fall within the exclusivity provisions of the Disablement Law, but are covered by the Act.  We therefore affirm the district court's decision to dismiss because Plaintiffs' lawsuit is precluded by the Act.

## I.     STANDARD OF REVIEW

{3}     "A motion to dismiss for failure to state a claim should not be granted unless it appears that [the] plaintiff cannot recover, or be entitled to relief, under any state of facts provable under the complaint."  *Duran v. N.M. Monitored Treatment Program*, 2000-NMCA-023, ¶ 19, 128 N.M. 659, 996 P.2d 922 (internal quotation marks and citation omitted).  We assume all factual allegations included in the complaint are true, but "conclusions of law are not [considered] admitted."  *Id*.   The applicability of the Disablement Law or the Act is a question of law that we review de novo.  *Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 11, 134 N.M. 421, 77 P.3d 1014; *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 21, 127 N.M. 47, 976 P.2d 999.

## II.     DISCUSSION

### A.     The Disablement Law Does Not Apply

{4}     By creating both the Disablement Law and the Act, the Legislature intended "to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers."  NMSA 1978, § 52-5-1 (1990).

> [Both laws] fulfill[] [their] purpose through a bargain in which an injured worker gives up his or her right to sue the employer for damages in return for an expedient settlement covering medical expenses and wage benefits, while

the employer gives up its defenses in return for immunity from a tort claim.

*Morales v. Reynolds*, 2004-NMCA-098, ¶ 6, 136 N.M. 280, 97 P.3d 612. The right to compensation is exclusive under the Disablement Law only when "the disablement or death is proximately caused by an occupational disease arising out of and in the course of his employment, and is not intentionally self-inflicted." NMSA 1978, § 52-3-8(C) (1953). At issue here is whether there is sufficient causation to categorize Castillo's disease as occupational. NMSA 1978, Section 52-3-32 (1989) states what is required to establish causation:

> The occupational diseases defined in [NMSA 1978, Section 52-3-33 (1973)] shall be deemed to arise out of the employment only if there is a direct causal connection between the conditions under which the work is performed and the occupational disease and which can be seen to have followed as a *natural incident* of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause. The disease must be *incidental to the character of the business* and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.

(Emphasis added.)

**{5}**     The Disablement Law clearly requires the disease to be closely related to the nature of the employment. To be covered by the Disablement Law, "the disease must be one due wholly to causes and conditions which are normal and constantly present and characteristic of the particular occupation[.] . . . Every worker in every plant of the same industry is alike constantly exposed to the danger of contracting a particular occupational disease." *Marable v. Singer Bus. Machs.*, 92 N.M. 261, 262, 586 P.2d 1090, 1091 (Ct. App. 1978) (internal quotation marks and citation omitted). There must be some "recognizable link between the disease and some distinctive feature of [the worker's] job." *Martinez v. Univ. of Cal.*, 93 N.M. 455, 457, 601 P.2d 425, 427 (1979) (internal quotation marks and citation omitted). "To come within the definition, an occupational disease must be a disease which is a natural incident of a particular occupation, and must attach to that occupation a hazard which distinguishes it from the usual run of occupations and is in excess of that attending employment in general." *Herrera v. Fluor Utah, Inc.*, 89 N.M. 245, 247, 550 P.2d 144, 146 (Ct. App. 1976) (internal quotation marks and citation omitted). "It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question." *Marable*, 92 N.M. at 262, 586 P.2d at 1091 (internal quotation marks and citation omitted).

**{6}**     In the present case, with relation to this issue of causation, Defendant solely argues

3

that Castillo "was exposed to pigeons in the work environment due to his particular occupation . . . as a warehouse laborer in an open-air warehouse." There is no evidence in the record, nor does Defendant cite any, that pigeons or psittacosis were incidental to the character of the oilfield supply business, or such businesses that employ people within warehouses. Nor is it otherwise obvious to the Court, from factually analogous case law or common knowledge which links particular injuries with particular occupations, that there is a known natural incident of psittacosis which relates to employment within the oilfield or warehouse-laborer occupational field. Thus, we cannot conclude that psittacosis was a natural incident of Defendant's employment in the warehouse. Therefore, the Disablement Law does not apply to this set of facts. We next determine whether Castillo's death would be covered exclusively by the Act.

## B.     The Act Is Plaintiffs' Exclusive Remedy

{7}     For the Act to apply and preclude a cause of action by the employee, three requirements must be met:

> A.     [A]t the time of the accident, the employer has complied with the provisions thereof regarding insurance;
>
> B.     [A]t the time of the accident, the employee is performing service arising out of and in the course of his employment; and
>
> C.     [T]he injury or death is proximately caused by accident arising out of and in the course of his employment and is not intentionally self-inflicted.

NMSA 1978, § 52-1-9 (1973). Plaintiffs do not dispute the accidental nature of Castillo's death. Rather, Plaintiffs argue that the third prong cannot be met, in that Castillo's death was not an accident "arising out of and in the course of [his] employment" and, thus, falls outside of the Act. "The term 'arise out of' relates to the cause of the injury, while the phrase 'in the course of' refers to the time, place and circumstances under which the injury occurred." *Wilson v. Richardson Ford Sales, Inc.*, 97 N.M. 226, 229, 638 P.2d 1071, 1074 (1981). We address each factor, starting with "in the course of employment." *Id.*

### 1.     In the Course of Employment

{8}     Plaintiffs argue that "in the course . . . of employment" requirement has not been met because, although the injury took place during the period of employment and at the place of employment, the circumstances of Castillo's injury were not related to his employment. *See Chavez v. ABF Freight Sys., Inc.*, 2001-NMCA-039, ¶ 10, 130 N.M. 524, 27 P.3d 1011 ("'[I]n the course of' . . . refers to the time, place, and circumstances under which the injury occurred." (alterations in original) (internal quotation marks and citation omitted)). Plaintiffs state that "[t]he 'condition' at Defendant's premises, i.e., roosting pigeons, was in

4

no way linked to . . . Castillo's employment, other than [by] location." Plaintiffs appear to argue that roosting pigeons were unrelated to Castillo's job and, therefore, the injury did not occur under the circumstances of employment.

**{9}**     Plaintiffs misinterpret the meaning of "circumstances" with regard to how our case law has defined the "in the course of employment" requirement. "The phrase, in the course of employment, relates to the time, place, and circumstances under which the accident takes place." *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 10, 144 N.M. 782, 192 P.3d 777 (internal quotation marks and citation omitted). But, we take this to mean that "an injury occurs in the course of employment when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is reasonably fulfilling the duties of employment or doing something incidental to it." *Grimes v. Wal-Mart Stores Inc.*, 2007-NMCA-028, ¶ 7, 141 N.M. 249, 154 P.3d 64 (alteration, internal quotation marks, and citation omitted). "If the worker was not reasonably involved in fulfilling the duties of his employment at the time of his injury, he was not acting within the course of his employment." *Flores*, 2008-NMCA-123, ¶ 10. This inquiry relates to the predictability and reasonableness of the worker's actions in becoming injured and not to the employer's contributions to the injury by permitting pigeons in a work area. Thus, the "circumstances under which the injury occurred" refer to the employee's actions: whether the employee was performing the duties of his job when the injury occurred.

**{10}**     Here, allegations by Plaintiffs established that Castillo contracted the disease while performing the duties of his employment, during work hours, while at Defendant's warehouse. Therefore, the requirement that the injury occur "in the course of his employment" has been met. The fact that pigeons were roosting in the warehouse does not factor into this inquiry because that fact has application to the question of causation, rather than whether an injury occurred in the course of employment. We therefore next analyze whether the cause of the injury meets the requirements of the Act.

## 2.     Arising Out Of Employment

**{11}**     As stated above, the Act requires that the injury "is proximately caused by accident arising out of . . . [the worker's] employment." § 52-1-9(C). Plaintiffs argue that causation cannot be met because Castillo's injury was not related to his job duties and that "contracting psittacosis from roosting pigeons is not a rational consequence of being a warehouse laborer." Plaintiffs state that roosting pigeons are not "an inherent part of one's job as a warehouse laborer at an oilfield supply business."

**{12}**     Our case law has established that "'arising out of employment' . . . require[s] a showing that the injury was caused by a peculiar or increased risk to which claimant, as distinguished from the general public, was subjected by his employment." *Berry v. J.C. Penney Co.*, 74 N.M. 484, 485-86, 394 P.2d 996, 997 (1964) (internal quotation marks and citation omitted). "[T]he accident must result from a risk incident to the work itself." *Id.* at 485, 394 P.2d 997; *see Williams v. City of Gallup*, 77 N.M. 286, 289, 421 P.2d 804, 806

5

(1966) ("The employment must contribute something to the hazard of the [injury]."). "An injury arises out of employment if the claimant was performing acts the employer instructed the claimant to perform, acts incidental to the claimant's assigned duties, or acts which the claimant had a common law or statutory duty to perform." *Chavez*, 2001-NMCA-039, ¶ 10 (internal quotation marks and citation omitted).

**{13}** In this case, Castillo's injury was caused by his exposure to pigeons and pigeon feces within Defendant's warehouse. Castillo had a peculiar or increased risk of being exposed to pigeons solely as a result of his employment in a warehouse occupied by pigeons. And it appears that this risk was particular to Castillo and his fellow laborers at this warehouse and not the general public because the allegations of roosting were limited to the warehouse. During the time that Castillo contracted psittacosis, Plaintiffs indicate that Castillo was performing activities that he was instructed to do by Defendant. Specifically, he was working as a laborer in the warehouse. They do not contend that he was performing abnormal, or non-work-related activities that caused him to be exposed to the pigeons. Although Castillo appears to have met the basic requirements for causation and is thus subjected to the Act's exclusivity provisions, the issue remains as to whether causation can be negated on the basis that the injury was precipitated by unusual circumstances connected with the environmental conditions of the employment.

**{14}** In *Stevenson v. Lee Moor Contracting Co.*, the New Mexico Supreme Court addressed a very similar question when considering whether a truck driver's injury was exclusively covered by the predecessor of the present Act. 45 N.M. 354, 356, 115 P.2d 342, 343 (1941). The truck driver was employed by a road building contractor and became ill with pneumonia after one day of driving and operating a particularly heavy truck that emitted excessive dust and fumes. *Id.* At trial, evidence established that the excessive gases were inhaled by the truck driver and irritated his respiratory tract "to such an extent that the pneumo[]cocci germs were enabled to multiply and become active in [the truck driver's] body . . . resulting in pneumonia." *Id.* At issue on appeal, similar to the case at bar, was causation. The then-version of the Act also required "the injury or death [to be] proximately caused by accident arising out of and in the course of his employment[.]" *Id.* at 358-59, 115 P.2d at 345 (emphasis, internal quotation marks, and citation omitted). The Court recognized that "[i]t is common knowledge that the breathing of fumes and gases by truck drivers performing such labor does not ordinarily cause pneumonia." *Id.* at 371, 115 P.2d at 353. Nonetheless, the Court reasoned:

> The effect of the findings of the court is that [the truck driver] was exposed to extraordinary hazards, greater than those of the community generally, who are engaged in truck driving, and greater than that of any other workman engaged in truck driving on the same job, and greater than ordinarily incident to the labor in which he was engaged.

*Id.* at 371-72, 115 P.2d at 353. The Court stated that, "[u]nder such state of facts[,] the courts generally agree that the injury sustained is by accident, and compensable under [the

Act]" and held that the Act applied to the truck driver's injury. *Id.* at 372, 115 P.2d at 353. The Court explained that "a disease, which is not the ordinary result of an employee's work . . . but contracted as a direct result of *unusual circumstances* connected therewith, is to be considered an injury by accident" under the Act. *Id.* at 372-73, 115 P.2d at 353 (alteration in original) (internal quotation marks and citation omitted); *see Gerber Products v. McDonald*, 691 S.W.2d 879, 881 (Ark. Ct. App. 1985) (holding that the claimant's injury was covered by worker's compensation where she was bitten by a spider while working on a food processing line); *Oalmann v. Brock & Blevins Co.*, 428 So. 2d 892, 896 (La. Ct. App. 1983) (holding that flea bites, causing an iron worker in a paper mill to get typhus fever, constituted an accident within intendment of workers' compensation law); *Lepow v. Lepow Knitting Mills, Inc.*, 43 N.E.2d 450, 452 (N.Y. 1942) (concluding that the death of salesman from malaria contracted from a mosquito bite while on a business trip in South Africa was covered by workers' compensation law).

**{15}**    This Court also addressed a similar issue of causation in *Schober v. Mountain Bell Telephone*, 96 N.M. 376, 630 P.2d 1231 (Ct. App. 1980). In *Schober*, a worker sought to secure workers' compensation benefits after he collapsed at work due to exposure to cigarette smoke, to which he was allergic. *Id.* at 378, 380, 630 P.2d 1233, 1235. The employer argued that the worker's "collapse was due to idiopathic sensitivity to tobacco smoke and not to any risk inherent in his employment." *Id.* at 380, 630 P.2d 1235. The employer contended that the injury therefore did not arise out of his employment and was not covered by the Act. *Id.* The evidence indicated that the areas where the worker worked contained tobacco smoke and "[a]ny and everyone who worked there was subjected to the smoke and to the risk that they might be or become allergic to it." *Id.* at 381, 630 P.2d 1236. We explained that, for the worker, "employment at Mountain Bell where others smoked contributed something to the hazard that he would ultimately collapse as his tolerance to cigarette smoke decreased." *Id.* We concluded that the worker's continuous exposure to tobacco smoke was a significant cause of his injury and, therefore, the injury did arise out of his employment. *Id.*

**{16}**    These cases lead us to conclude that, although the pigeons were an unusual circumstance of Castillo's employment and that pigeons and psittacosis may not be inherent risks of working in a warehouse, his injury is nonetheless exclusively covered by the Act. Castillo was clearly subject to a greater risk of contracting psittacosis by working in Defendant's warehouse. Like in *Stevenson* and *Schober*, the continuous exposure to pigeons and pigeon feces at work was a significant cause, if not *the* cause of his injury. It was because of his employment that Castillo contracted the disease and died. In other words, a risk of his employment at the warehouse, however unusual, resulted in the injury. Therefore, we conclude that, even though the causation was unusual, the injury was sufficiently connected to his employment for recovery to be exclusively covered by the Act. The district court did not err in dismissing Plaintiffs' lawsuit, as Plaintiffs' exclusive remedy is through the Act.

## III.    CONCLUSION

**{17}** Since Castillo's death arose out of and in the course of employment, we conclude that the Act provided an exclusive remedy to Plaintiffs. We affirm the district court.

**{18}** **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

_____
**TIMOTHY L. GARCIA, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for** *Castillo v. Caprock Pipe & Supply, Inc.***, Docket No. 31,499**

**APPEAL AND ERRO**
Standard of Review

**EMPLOYMENT LAW**
OSHA

**TORTS**
Wrongful Death

**WORKERS COMPENSATION**
Basis for Compensation
Course of Employment
Death Benefits
Exclusive Remedy