## KAUFMAN V. UNIVERSITY OF N.M. HOSPITAL

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**SCOTT KAUFMAN,**
**Worker-Appellee,**
**v.**
**UNIVERSITY OF NEW MEXICO HOSPITAL and STATE OF NEW MEXICO RISK MANAGEMENT,**
**Employer/Insurer-Appellants.**

Docket No. A-1-CA-36456
COURT OF APPEALS OF NEW MEXICO
April 17, 2019

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION, Leonard J. Padilla, Workers' Compensation Judge

### COUNSEL

Pizzonia Law, Justin P. Pizzonia, Rose Bryan, Albuquerque, NM, for Appellee

Garcia Law Group, LLC, Jacob R. Candelaria, Albuquerque, NM, for Appellants.

### JUDGES

BRIANA H. ZAMORA, Judge. WE CONCUR: LINDA M. VANZI, Judge, JACQUELINE R. MEDINA, Judge

**AUTHOR:** BRIANA H. ZAMORA

### MEMORANDUM OPINION

**B. ZAMORA, Judge**

{1}    The University of New Mexico Hospital (Employer) appeals the determination of the workers' compensation judge (WCJ) that Scott Kaufman's (Worker) allergic reaction to a co-worker's perfume-like scent arose out of and in the course and scope of his employment. We affirm.

### BACKGROUND

**{2}** The evidence admitted at trial, together with the WCJ findings of fact and conclusions of law, established the following. On January 5, 2015, Worker, a respiratory therapist for UNMH, was exposed to a perfume-like scent emanating from a co-worker. Although Employer has an internal policy prohibiting the use of strong scents at the workplace, the scent from the coworker was so pervasive it permeated the work space. As a result of the exposure, Worker began experiencing shortness of breath, burning lips and tightness in his throat. Worker's symptoms did not subside and he was transported to the emergency room on a stretcher where he was treated for an asthma attack, upper respiratory infection, and allergies. The emergency room health care providers diagnosed Worker with an allergic reaction caused by exposure to the strong scent in the workplace and discharged Worker once he was asymptomatic.

**{3}** Employer's policy, of which Worker was aware, is that Employer makes the initial selection of healthcare provider (HCP), and injured employees are required to obtain treatment through Occupational Health Services (OHS) at UNMH. Worker called OHS on January 7, 2015, and was scheduled to be seen on January 9th, the first available appointment. He then obtained an appointment and received treatment at Lobo Care, a UNM clinic for UNMH employees, on January 8, 2015. Dana Haupt, a certified nurse practitioner with OHS, treated Worker on January 9, 2015, and referred Worker to Lobo Care for continuing treatment if he did not feel better by January 12, 2015. Haupt diagnosed Worker with a "likely allergic reaction to perfume, not work related [and] resolving." Worker returned to Lobo Care on January 12, 2015, and was treated by Dr. Melissa Martinez for his ongoing symptoms and was instructed not to return to work until January 19, 2015.

**{4}** Dr. Martinez referred Worker for treatment with Dr. Nathan Boyd and, approximately one month after the exposure, Dr. Boyd began treating Worker for the throat irritation resulting from his work-related allergic reaction. Dr. Boyd diagnosed Worker with plica ventricularis, neck pain, and allergic reaction and opined to a reasonable degree of medical probability that Worker's medical conditions were causally related to his work-related exposure.

**{5}** Over a year later, Worker again treated with Dr. Martinez for a chronic sore throat and difficulty speaking. Dr. Martinez determined that the "throat pain and voice dysfunction . . . seem to get worse when he is at work and talking all the time and gets better when he is at home."

**{6}** Prior to trial, Employer objected to all medical records and/or testimony from Drs. Boyd and Martinez, arguing that these physicians were not authorized HCPs under the Workers' Compensation Act, NMSA 1978, §§ 52-1-1 to -70 (1929, as amended to 2017) (the Act). In the compensation order issued after trial, the WCJ concluded that Employer made the initial selection of HCP, choosing OHS and that "Worker's authorized HCP as of January 5, 2015" was OHS and, as of January 12, 2015, his authorized HCPs included Drs. Martinez and Boyd. The WCJ based this conclusion on a finding that Haupt referred Worker to Dr. Martinez (Lobo Care) for continuing treatment if Worker did not feel better by January 12, 2015. The WCJ also concluded that Worker's allergic

reaction to the perfume-like scent arose out of and occurred within the course and scope of his employment. The WCJ found that "Worker's injuries [were] causally related to his employment" and awarded Worker reasonable and necessary medical care for his work-related injuries. Employer appeals.

**{7}** Because this is a memorandum opinion and the parties are familiar with the facts, we reserve discussion of additional facts where pertinent to our analysis.

## DISCUSSION

**{8}** Employer makes two arguments that we consider in reverse order. First, that OHS's "recommendation" that Worker seek follow-up care with Lobo Care is not a "referral making the Worker's primary care physician a healthcare provider capable of providing admissible testimony;" Employer next contends that the WCJ's conclusion that Worker's injuries were causally related to his employment is not supported by substantial evidence.

## I.      Testimony of Dr. Martinez and Dr. Boyd Was Admissible

**{9}** The WCJ concluded that Drs. Martinez and Boyd were authorized HCPs based on his finding that Haupt referred Worker "to Lobo Care [Dr. Martinez] for continuing treatment[.]" "[W]e review the whole record to determine whether the WCJ's findings . . . are supported by substantial evidence." *Grine v. Peabody Nat. Res.,* 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190. "With regard to issues of law, this Court determines whether the WCJ correctly applied the law to the facts, viewing the facts in the light most favorable to the determination below." *Buchanan v. Kerr-McGee Corp.*, 1995-NMCA-131 ¶ 5, 121 N.M. 12, 908 P.2d 242.

**{10}** At trial, Worker sought to introduce the medical records and testimony of Drs. Martinez and Boyd to establish that his work-related exposure caused the allergic reaction and associated symptomology. *See* NMSA 1978, § 52-1-28(B) (1987) (stating the worker has the burden of proving a causal connection between a work-related accident and his or her injuries through the testimony of an authorized health care provider). The WCJ allowed the testimony and records of both doctors on the basis that Haupt had referred Worker to Dr. Martinez (Lobo Care) and, therefore, Dr. Martinez and any of her referrals were authorized HCPs under the Act.

**{11}** An authorized health care provider is "any person, entity, or facility authorized to furnish health care to an injured or disabled worker." 11.4.7.7(M) NMAC. "Only a health care provider who has treated the worker . . . may offer testimony at [a] workers' compensation hearing." NMSA 1978, § 52-1-51(C) (2013). A medical report from a physician constitutes "testimony" under the Act. *See Jurado v. Levi Strauss & Co.*, 1995-NMCA-129, ¶¶ 24-25, 120 N.M. 801, 907 P.2d 205 (holding the written medical report of an unauthorized HCP is inadmissible testimony within the meaning of the Act). Both parties agree that Employer made the initial selection of HCP by choosing OHS and they do not dispute that Worker knew that he was to receive treatment at OHS. *See*

NMSA 1978, § 52-1-49(B) (1990) (stating that an employer may choose a worker's initial health care provider or may allow the worker to choose).

**{12}** A "referral" is "the sending of a patient by the authorized HCP to another practitioner for evaluation or treatment of the patient and it is a continuation of the care provided by the authorized HCP." 11.4.7.7(X) NMAC. *See* 11.4.4.12(C)(1) NMAC. ("A referral by an authorized HCP to another HCP shall be deemed a continuation of the selection of the referring HCP."). The Rules do not provide an exception when the referring HCP disagrees with the referred HCP's opinion.

**{13}** Haupt concluded that Worker's injury was not work-related and instructed Worker to treat at Lobo Care or his primary care physician should he need additional treatment. Employer agreed with Haupt's determination as to causality, but nevertheless advised Worker his claim was compensable as a "temporary exacerbation of a pre-existing condition" and his treatment from Haupt and her referrals would thus be compensable. However, Employer required that "[a]ny additional treatment would require a referral or direct treatment from [OHS] in order to be covered under the . . . Act." In subsequently notifying Worker that it was denying his claim, Employer specifically stated "[o]ur provider [OHS] *referred* you to your primary care provider for further follow up if necessary; however you self-referred to specialists. The treatment you received from [OHS] was reviewed and was found to be appropriate." (Emphasis added.) In our view, Worker merely followed the directions of Haupt and Employer, both of whom directed him to treat at OHS and its referrals. We conclude that under the facts of this case, substantial evidence supports the WCJ's determination that when Haupt told Worker to go to back to Lobo Care if he did not feel better, she was referring him for additional treatment as a continuation of the care provided by OHS, an authorized HCP.

**{14}** As a result, when Haupt referred Worker to Lobo Care, Dr. Martinez became an authorized HCP, as did her referrals and hence, the testimony of Drs. Martinez and Boyd establishing causation of the work-related injury was admissible under the Act.

**II. Substantial Evidence Supports the WCJ's Conclusion That Worker's Injury Arose Out of His Employment**

**{15}** Employer contends that substantial evidence is lacking to support the WCJ's findings that Worker's allergic reaction to a perfume-like scent arose out of his employment, was a risk incident to his employment and was causally related to Worker's employment. Employer also argues that Worker's employment "did not increase, or contribute to, Worker's risk of smelling perfume or essential oils" particularly relative to the general community. We disagree.

**{16}** We review Employer's arguments under a whole record standard of review. *See Moya v. City of Albuquerque*, 2008-NMSC-004 ¶ 6,143 N.M. 258, 175 P.3d 926. Generally, "we will not substitute our judgment for that of the agency; although the evidence may support inconsistent findings, we will not disturb the agency's finding if supported by substantial evidence on the record as a whole." *Rodriguez v. Permian*

*Drilling Corp.,* 2011-NMSC-032 ¶ 7, 150 N.M. 164, 258 P.3d 443 (alterations, internal quotation marks, and citation omitted). "Where the historical facts are undisputed, whether the accident arose out of and in the course of the employment is a question of law." *Hernandez v. Home Educ. Livelihood Program, Inc.,* 1982-NMCA-079, ¶ 9, 98 N.M. 125, 645 P.2d 1381.

**{17}**    Worker's claim is compensable under the Act if, at the time of the accident, he was performing work arising out of and in the course of his employment and "the injury . . . is proximately caused by [an] accident arising out of and in the course of his employment[.]" NMSA 1978, § 52-1-9(B), (C) (1973). "[A]rising out of employment" denotes "a risk reasonably incident to [the] claimant's work." *Flores v. McKay Oil Corp.,* 2008-NMCA-123, ¶ 10, 144 N.M. 782, 192 P.3d 777 (internal quotation marks and citations omitted). An injury arises out of employment if a worker was completing tasks the employer instructed him or her to complete or tasks incidental to his or her assigned duties. *Chavez v. ABF Freight Sys.,* 2001-NMCA-039, ¶ 10, 130 N.M. 524, 27 P.3d 1011; *see Flores*, 2008-NMCA-123, ¶ 10 ("The employment [must] be a contributing proximate cause of the injury. The causative danger must be peculiar to the work itself and not independent of the employment relationship."). In deciding whether a risk is peculiar or incident to a worker's employment, we have looked at whether the general public would be exposed to a similar risk. *See Castillo v. Caprock Pipe & Supply, Inc.*, 2012-NMCA-085, ¶ 13, 285 P.3d 1072.

**{18}**    Here, Worker was working as a respiratory therapist at the time of the underlying incident. While discharging his work-related duties, he was exposed to a strong, perfume-like scent emanating from a coworker. The scent was so pervasive that one of Worker's co-employees had to use a rescue inhaler. As a result of the exposure, Worker suffered an immediate reaction as his lips began to burn and his throat felt like it was closing. Worker's condition deteriorated to the point where he was transported from his workplace to the emergency room on a stretcher. There is no question that Worker was doing his job at his place of employment when he was injured. The determinative question, then, is whether the risk was peculiar to Worker's employment or whether the general public would be exposed to a similar risk.

**{19}**    We have held that there is substantial evidence to support the compensability of workers' claims for work-related exposures akin to Worker's exposure in this case. *See Castillo*, 2012-NMCA-085, ¶ 13 (holding that the worker's employment in a warehouse occupied by pigeons "had a peculiar or increased risk" of exposure to pigeons and thus, the worker's contraction of psittacosis and ultimately his death were "caused by his [work-related] exposure to pigeons and pigeon feces"); *Schober v. Mountain Bell Tel.*, 1980-NMCA-113, ¶ 17, 96 N.M. 376, 630 P.2d 1231 (holding that the worker's severe reaction to cigarette smoke arose out of his employment because of his ongoing exposure to the smoke).

**{20}**    Like the workers in *Castillo* and *Schober,* Worker's exposure to the strong scent in a confined space was a risk incident to his work. While it is true that members of the public have the potential of exposure to perfume or other strong scents, the public is not

tasked with treating patients in a confined space with a coworker from whom a strong scent is emanating. More importantly, unlike most public places, UNMH has an internal policy expressly prohibiting the use of strong scents in its workplace. Thus, even members of the public would not generally have been exposed to such a risk at the hospital. Employer argues that the coworker was not a UNMH employee, suggesting that it had no supervisory control over a non-employee's actions. Irrespective of who employed the coworker, because of the nature of Worker's employment and day-to-day duties, and despite the policy that was in place to protect workers from exposure to strong scents, Worker had no choice but to work with this individual on the date of the incident. Exposure to pigeon feces and cigarette smoke are common to the public and are comparable to exposure to perfume-like scents. Nonetheless, like the workers in *Castillo* and *Schober*, Worker's ongoing and pervasive exposure to the scent was a result of his required attendance at work and thus, was a risk incident to his employment, a risk which Employer was evidently well aware of and sought to address in light of its internal policy prohibiting strong, perfume-like scents in the work place. We recognize that under a similar set of facts, a WCJ could reach the opposite conclusion and determine Worker's employment did not increase Worker's risk of smelling perfume or essential oils particularly relative to the general community. However, our task is not to reweigh the evidence. *See Schober*, 1980-NMCA-113, ¶ 16 (stating that "it is the function of the trier of fact and not [the appellate court] to weigh the evidence). Accordingly, we hold there is substantial evidence supporting the WCJ finding that Worker's allergic reaction was causally related to and arose out of and in the course and scope of his employment with Employer.

**CONCLUSION**

**{21}**     For the foregoing reasons, we affirm.

**{22}     IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**